# H. A. Saylor et al., Plffs. in Err., v. Commonwealth to Use of Philip Ziegler et al.

If a prothonotary is directed to ascertain the amount of a judgment entered by the court he is liable on his official bond for damages resulting to the plaintiff from negligence in the performance of his duty.

(Decided March 1, 1886.)

Error to the Common Pleas of Lehigh County to review a judgment for plaintiff in an action against a prothonotary for negligence in entering the judgment.    Affirmed.

The facts and the case fully appear in the following opinion of the court below, delivered by J. H. HAGENMAN, P. J.:

H. A. Saylor, one of the defendants, was prothonotary of Lehigh county, from the first Monday of January, 1876, to the first Monday of January, 1879.    During his term of office, on the 23d of August, 1877, the plaintiffs brought suit against Peter N. Hensinger, C. A. Miller, A. S. Miller, and Michael Miller, and the same day filed a copy of the notes on which suit was brought, and an affidavit containing a statement of the amount of their claim on the notes.    October 1, 1877, on application of plaintiffs' attorney, the court, notwithstanding an affidavit of defense had been filed, entered judgment for plaintiffs, amount to be ascertained by the prothonotary.    October 4, 1877, the prothonotary, without a præcipe from plaintiff's attorney, assessed the amount at $593.37, instead of $1,449.86, as set forth in the claim filed September 16, 1878.    David D. Hensinger paid the judgment to plaintiffs' counsel and took an assignment of it, and, when the money was subsequently paid to

NOTE.—A prothonotary and his bondsmen are liable for loss sustained by reason of incorrect certificates of searches for liens. Ziegler v. Com. 12 Pa. 227.    Prior to the act of April 13, 1872 (P. L. 1140), he was responsible only to the person who employed him.    Siewers v. Com. 87 Pa. 15.    So, he is liable for the inaccurate entry of a judgment (Mann's Appeal, 1 Pa. St. 24; Frankem v. Trimble, 5 Pa. 520; Stephens v. Downey, 53 Pa. 424) ; or for failure to indorse on the writ that the exemption has been waived, when an alias testatum fi. fa. is issued.    (Wilson v. Arnold, 172 Pa. 264, 33 Atl. 552) ; or where the sheriff surrenders attached property on the false notification that special bail has been entered (Work v. Hoofnagle, 1 Yeates, 506).

As to personal liability of officers for judicial acts, see editorial notes to Austin v. Vrooman, 14 L. R. A. 138, and Thompson v. Jackson, 27 L. R. A. 92, presenting the authorities on their respective subjects.

plaintiffs, the mistake for the first time was discovered. The mistake was afterwards corrected, but, before proceedings were instituted for that purpose, other judgments had been entered, which absorbed the money made on a sale, by the sheriff, of defendants' real estate. But for the mistake of the prothonotary in the entry of the amount of the judgment, the plaintiffs would have realized their entire claim of $1,449.86, out of the proceeds of sale. This action was brought against the prothonotary and his sureties on his official bond to recover the loss resulting from the mistake made in the entry of the amount of the judgment.

It was contended at the trial by defendants' counsel that the mistake made by the prothonotary was a ministerial, and not an official, act, and hence there could be no recovery on his official bond. The court concurred in this view of the case, and on motion entered a compulsory nonsuit. This motion is to take off the nonsuit.

Rule 3, § 10, of the rules of court provides that in a suit on a promissory note, etc., if plaintiff filed an affidavit stating the amount he verily believes to be due, together with a copy of the instrument, he shall be entitled to judgment after twenty days, etc., unless the defendant shall have filed an affidavit of defense, setting forth the nature and character of the same. Section 13 of same rule says that it shall be stated whether the defense is to the whole or part of plaintiffs' claim. Section 15 provides that, where the affidavit of defense is defective in matter of substance, the court on motion or after hearing on rule granted will enter judgment for the plaintiff for want of a sufficient affidavit of defense. Rule 15, § 78, says that in all judgments by default, where, from the nature of the action, the damages may be assessed without a jury of inquiry, if the plaintiff has filed an affidavit of the amount of his claim the judgment shall be for that amount; in all other similar cases the prothonotary shall assess the damages.

The plaintiffs filed an affidavit of their claim which entitled them to judgment if no affidavit of defense had been put in. The affidavit stated that the action was founded on two notes, copies of which were set forth: First, the one with the credits indorsed showing the balance due, immediately followed by the other note with its sum due, and both, added together, making the sum of $1,441.18.

Peter N. Hensinger, one of the defendants, filed an affidavit of defense which stated, in substance, that Peter W. Hensinger did not sign the notes in suit. No defense was alleged on the merits. By mistake the prothonotary made the record read Peter W. instead of Peter N. Hensinger, as appeared in the præcipe and copy of notes filed. This error resulted in delay and loss to plaintiff. If no affidavit had been put in, it would have been the duty of the prothonotary in vacation without action of the court, to enter judgment; but, there being an affidavit, he could not pass upon its sufficiency, and therefore it was necessary to apply to the court. The plaintiffs did what § 15 gave them the privilege of doing; they moved the court for judgment. The affidavit was regarded as defective in substance, and, after the mistake made by the prothonotary was amended, the court, October 4, 1877, entered judgment for the amount of claim set forth in the affidavit of cause of action, amount to be ascertained by the prothonotary that day. The prothonotary assessed the damages to be $593.37. If the prothonotary had entered judgment for the amount of the claim as he was directed by the court to do and as it appeared in the claim filed, it would have been for $1,441.18 with a small sum of interest added. It was owing to this mistake that the plaintiffs lost the greater part of their claim. Have they a remedy to recover the loss? If so, it must be on the prothonotary's official bond. If it could be shown that the wrong done the plaintiff was intentional, that it was with a view of injuring them, or that the officer conspired with others to cheat and defraud the plaintiffs, no doubt the prothonotary would be personally liable without regard to his bond. But this is not alleged and was not the case. It was simply an omission and neglect to perform an official duty; not an intentionally wrongful act. He performed the act so carelessly as to produce damage to the plaintiffs. If he had examined to ascertain the amount of claim set forth in the affidavit of cause of action as the court had ordered him to do, he would have seen and been informed by that paper that the plaintiffs' claim on two notes was $1,441.18 at the time suit was instituted.

The inquiry arises: Is the prothonotary liable on his official bond for the loss sustained by the plaintiffs occasioned by his mistake?

The 76th section of the act of April 14, 1834, provides that the prothonotary shall "give a joint and several bond to the com-

monwealth in such sum as the governor shall judge sufficient, with condition faithfully to execute the duties of . . . [his] office."

The 77th section, same act, reads: "The prothonotaries . . . shall have and exercise respectively in the courts to which they severally belong, and with full effect in term time and vacation, the powers and authorities following, to wit: They shall have power: (1) To sign and affix the seal of the respective court to all writs and process, and also to the exemplifications of all records and process therein; (2) to take bail in civil actions, depending in the respective court; (3) to enter judgments, at the instance of plaintiffs, upon the confessions of defendants; (4) to sign all judgments; (5) to take the acknowledgment of satisfaction of judgments or decrees entered on the record of the respective court; (6) to administer oaths and affirmations in conducting the business of their respective offices."

That these are all the duties required of prothonotaries no one will pretend. They are by law compelled to perform numerous acts, for misfeasance or errors regarding which they and their sureties are liable. Was the ascertainment of the amount and its entering as he was ordered and directed by the court, an official act, an act pertaining to his office, and is it covered by his bond to the commonwealth? The condition of the bond is that he shall faithfully execute the duties of his office, and well and truly account for and pay according to law all moneys which shall be received by him in his official capacity and to deliver books, etc.

In Ziegler v. Com. 12 Pa. 227, it was urged that a prothonotary, sued for a mistake in a certificate of liens, by which a party was misled, was not liable, because it was not made the duty of that officer to make searches and give such certificates; that the certificate given was a nullity, because it did not have the seal of the court, and that it did not appear that the officer had been paid for the certificate. All these defenses were held invalid, the supreme court saying in Pennsylvania it had ever been held a portion of the duty of the prothonotary to make searches and give certificates; that the law holds public officers to exercise their duties with fidelity, or they will become responsible to the party aggrieved.

M'Caraher v. Com. 5 Watts & S. 21, 39 Am. Dec. 106, was a suit against a recorder of deeds and his sureties on the official

bond. It was urged that the act of assembly did not make it the duty of the recorder to give certificates that he could find no mortgages; that a party may search for himself, and that for the giving of a certificate of that character no action would lie. The defense was held not well taken. Judge SERGEANT, in the opinion, saying: "Neither the acts of assembly requiring official bonds, nor the bonds themselves, define the details of duty appurtenant to an office to which the party is appointed, nor, indeed, could it well be done. It is obvious that the extent of duty in an office must vary with its nature, and perhaps there is not one in which these details could be expressly defined and set out. The act of assembly contents itself with imposing an obligation to perform the duties of the office, leaving the character and bounds of those duties to be settled by the nature of the office, by general principles of convenience, policy, and public security, by usage, and by such matters of express legislation as may be connected with the subject."

It is the practice, seemingly, all over the commonwealth, and recognized by the supreme court, to refer to the prothonotary the assessment of damages, where a judgment for want of a sufficient affidavit of defense is entered by the court, without requiring the plaintiff to proceed by writ of inquiry. This appears from the numerous cases referred to in § 453 of Troubat & H. Practice.

A prothonotary and his sureties were held liable on the official bond for costs due to the officer's predecessor received by him. It can nowhere be found that it is one of the officer's duties to receive such fees; it is money belonging to another which might just as well be paid to the party entitled. But the court held that such liability existed because it was a matter of public convenience, and in accordance with an almost universal practice that fees belonging to a former prothonotary should be allowed to be paid to the one in office. The defense urged was that the bailees were not responsible, unless the act complained of was a duty incumbent and obligatory upon the officer in his official capacity and that liability of sureties was not to be extended by implication. Watson v. Smith, 26 Pa. 395.

From the foregoing, the conclusion is almost, if not quite, irresistible that the assessment of damages, or, rather, the direction to ascertain the amount of a judgment entered by the court, was a duty which the law required of the prothonotary, and for

negligence in its performance to the injury of the plaintiff there is a remedy.

The officer is given a fee for the service done here. The fee bill of 1868 (Purdon's Digest, p. 674), which was in force when the case was pending, gives the prothonotary for entering judgments on motion in open court, 75 cents.

It may be argued that it is the duty of the plaintiff to see that his judgment is properly entered. That this is so admits of no doubt. It was so held in Wood v. Reynolds, 7 Watts & S. 406, and in Ridgway's Appeal, 15 Pa. 177, 53 Am. Dec. 586. But these cases have no reference to the question of liability of the prothonotary to the plaintiff, whose judgment was wrongly entered. Wood v. Reynolds was a question between the plaintiff and a purchaser from the defendant without notice of the judgment in which the defendant's name was not fully and correctly entered. In Ridgway's Appeal the judgment was entered on the docket without giving the names of the parties who composed the defendant firm. The firm name was wrongly stated; the judgment docket gave no notice of the judgment, as it in fact existed. It was held, in a proceeding of distribution of the proceeds of a sheriff's sale, that the plaintiff in such a defectively entered judgment could not participate in the proceeds. Judge Rogers, in the opinion, says: "The remedy of the party aggrieved is against the prothonotary, for, as it regards purchasers and creditors, it is the plaintiffs' duty to see that his judgment is rightly entered in the judgment docket."

The principle which ruled Crutcher v. Com. 6 Whart. 340, is to the same point, and applies strongly to this case. It grew out of a suit on two notes. Judgment was entered for want of an affidavit of defense. A reference was made to the prothonotary to ascertain the damages.

Said Judge Huston in Brotherline v. Mallory, 8 Watts, 135: "Where the amount is mere matter of calculation, this is the practice everywhere; if the action sound in damages, and no data for calculation, a writ of inquiry issues and the sum is ascertained by an inquest." According to a paper filed, damages were assessed on both notes, but the docket contained the entry, damages assessed for $1,331. This was the amount of the smaller note. In the opinion, Judge Rogers says: "It is said to be hard that the plaintiff should suffer by the mistake of the prothonotary, but if he is injured by that officer, he has his remedy."

In Stephens v. Downey, 53 Pa. 424, where a plaintiff sought to hold his attorney liable because a judgment had not been properly docketed, the supreme court said that there was no such liability, on the attorney's part, for what was the neglect of the officer of the law.

Of course, it is the duty of the plaintiff to see that his judgment is properly entered. So it is his duty to see that his claim, filable under the mechanics' lien law, and his title, deed, and mortgage are entered and recorded. If he does not, and the record does not show what he wants it to show, he loses the benefit of the notice it would give to the world. If the prothonotary does not enter his judgment at all, or if he enters it for $500 instead of $1,400; if he wrongly copies on the docket the description in the mechanics' lien claim, or if the recorder of deeds recording shows that the mortgage is for $1,000 instead of $10,000, or makes a mistake in the description of the recorded deed, —omits, for instance, one of the two tracts included in the deed, —and if loss ensues by reason of one of these errors, the plaintiff, the claimant, the mortgagee, or the grantee is told that it was his duty to see that his judgment or instrument was properly entered. What else can be said to him? The object of entering of record is to give constructive notice, but the record failed to give it. Subsequent encumbrancers and purchasers without notice were misled. But where was it ever said in a suit against a prothonotary for entering a judgment wrongly, or not at all, that the plaintiff could not recover, because it was his duty to see that his judgment was properly entered? Or to a mortgagee or grantee that he could not recover for an error in the recording for the same reason? It is no longer an open question, that it is the duty of a creditor to see that his judgment is properly entered of record, but, if there is any mistake, his remedy is against the prothonotary for any loss that may occur in consequence thereof. By far the most important and responsible duty of the prothonotary is to enter judgments correctly. As to mistakes or omissions in other matters connected with the office, an amendment will correct the error. But not so with judgments. A wrong name or amount in entering of a judgment or an omission to properly enter or index it, will in most instances subject a plaintiff to loss before the mistake is discovered, and when discovered, it is too late to remedy the evil. There is no principle of law better settled than where a prothono-

tary makes a mistake in entering a judgment, and the plaintiff sustains a loss, he has a remedy on the prothonotary's official bond. Wherein consists the difference of an error made·by the prothonotary in entering a judgment by order of the court? In the one case the plaintiff hands him his bond with warrant of attorney, and requests the judgment to be entered; in the other the court directs him to enter the judgment, and ascertain the amount from the cause of action filed. This is now the practice throughout the state, and therefore it is a duty attached to the office. A party who takes the office gives a bond conditioned faithfully to discharge all its duties. To enter judgments is one of them, indeed the most important one. Hence, being an essential part of the duties of the officer, a failure to perform them properly makes him liable on his official bond, to the party injured.

The rule to take off the nonsuit is made absolute.

*Edward Harvey* and *Thomas B. Metzger,* for plaintiffs in error.—Damages are assessable in three forms: By writ of inquiry or by the court itself, with the consent of the plaintiffs, or by some one at the direction of the court. Tidd, Pr. *570. In the courts of the King's bench they were ascertained by reference to the master, and in the common pleas by the prothonotary or by writ of inquiry. Tidd, Pr. *570. These methods are regarded as elective.

In debt upon a bill obligatory if the plaintiff have judgment by default or confession, the course of the King's bench is to tax the damages if the plaintiff will assent to it; if not, he shall have a writ of inquiry. Holdipp v. Otway, 2 Wms.' Saund. 106.

"This is an inquest of office to inform the conscience of the court, who, if they please, may themselves assess the damages," per WILMOT, Ch. J. Bruce v. Rawlins, 3 Wils. 62.

It is at the plaintiffs' option to refer it to the prothonotary or have a writ of inquiry. Blackmore v. Flemyng, 7 T. R. 447.

"The taking the inquisition and entering final judgment were only the conclusion and necessary consequence of the interlocutory judgment; for the court themselves, if they had so pleased, might, upon the interlocutory judgment, have assessed the damages, and thereupon given final judgment . . . and the inquisition is only a matter of course taken to inform the

conscience of the court," per Wilmot, Ch. J. Hewit v. Mantell, 2 Wils. 374.

In Andrews v. Blake, 1 H. Bl. 529, a rule was taken to show cause why it should not be referred to the prothonotary to ascertain damages and calculate interest on the bill without a writ of inquiry. The court made absolute the rule, saying "that, as it would be the means of saving expense to the parties," they thought it right to do so. A similar course was followed in Rashleigh v. Salmon, 1 H. Bl. 252, and in Longman v. Fenn, 1 H. Bl. 541.

In this state the authorities are to the same effect. In Watkins v. Phillips, 2 Whart. 211, Rogers, J., says: "But a writ of inquiry is a mere inquest of officers to inform the conscience of the court, who, if they please, may themselves assess the damages. . . . And it has been the practice, instead of executing a writ of inquiry, and without any previous application to the court, in actions on promissory notes, bills of exchange, covenants for the payment of a sum certain, or on an award, and, indeed, in all cases where the court have nothing more to do than calculate the interest upon a sum previously ascertained and fixed, to refer the assessment to the prothonotary. If either party is dissatisfied with the assessment of damages, the error may be corrected by appeal to the court."

In Bank of United States v. Thayer, 2 Watts & S. 449, the same learned justice says: "A writ of inquiry is only necessary to inform the conscience of the court, who may in all cases dispense with it, if they think proper."

And in Noble v. Laley, 50 Pa. 284, Agnew, J., says: "It is on this ground that, in all cases where the damages may be ascertained by calculation, it is referred to the prothonotary to liquidate them." The court, in McClung v. Murphy, 2 Miles (Pa.) 180, says: "In practice, the assessment of damages is really the act of the plaintiff, though nominally that of the prothonotary. It is made without notice to the defendant, and has relation to the date of the judgment." If a mistake occur, as where damages were assessed on one of several notes, the court will, on notice, correct it and permit the damages to be reassessed. Kensington v. Van Dusen, D. C. of Phila. 1848; 1 Troubat & H. Pr. § 453, p. 250.

In Hutchinson v. Com. 6 Pa. 124, it was held that no action lies on the official bond of a prothonotary to recover a share of

fees received by him after his removal from office. The same rule was laid down in Com. v. West, 1 Rawle, 29; Com. use of Black v. Conard, 1 Rawle, 249.

Sureties of a sheriff are not liable for printer's bills, although he is required by law to advertise, and had received money therefor from the suitors or parties. Com. v. Swope, 45 Pa. 535, 84 Am. Dec. 518.

Nor are they liable when the sheriff has drawn, from time to time, certain sums of money from the county treasury, supposing that they would become due for official services. Com. use of Dauphin County v. Hoffman, 2 Pearson (Pa.) 147.

Liabilities of sureties are *strictissimi juris,* and cannot be extended by construction or enlarged by the acts of others. People v. Pennock, 60 N. Y. 421; Bensinger v. Wren, 100 Pa. 500.

Where there was no law making it the duty of the clerk of the court to receive money deposited as a tender, it was held that the sureties on the official bond of such clerk were not liable for money paid into open court and handed to the clerk. Carey v. State, 34 Ind. 105; Scott v. State, 46 Ind. 203.

*Harry G. Stiles* and *John D. Stiles,* for defendants in error.— One of the conditions of the bond is that the prothonotary shall faithfully execute the duties of his office. Van Etten v. Com. 102 Pa. 596; Crutcher v. Com. 6 Whart. 340.

The law will not permit the prothonotary to take advantage of his own negligence to mislead others, and the prothonotary and sureties are liable for damages if he omits a portion of his duty. Ziegler v. Com. 12 Pa. 227.

The prothonotary is answerable for the injury that is caused by his negligence. The act performed in this case was an official act. M'Caraher v. Com. 5 Watts & S. 21, 39 Am. Dec. 106.

Every public officer ought to know his duty and exercise it with fidelity, or he will become responsible to the party aggrieved. Work v. Hoofnagle, 1 Yeates, 506.

The sureties on an official bond of the prothonotary are liable for costs received by him for his predecessor in office. Watson v. Smith, 26 Pa. 395.

The prothonotary is liable on his official bond to the injured party for issuing an execution without authority. Frankem v. Trimble, 5 Pa. 520.

The prothonotary is liable on his official bond for not noting the revival of a judgment. Mann's Appeal, 1 Pa. St. 29.

The prothonotary is liable on his official bond for not including a judgment in a certificate of search. Siewers v. Com. 87 Pa. 15.

A mistake in giving a Christian name of the defendant renders the prothonotary liable. Ridgway's Appeal, 15 Pa. 182, 53 Am. Dec. 586.

See Noble v. Laley, 50 Pa. 284; Bank of United States v. Thayer, 2 Watts & S. 448, 449; Bear v. Patterson, 3 Watts & S. 237.

PER CURIAM:

The opinion of the learned judge on taking off the nonsuit contains a correct statement of the law as to the liability of the prothonotary, and on that opinion the judgment is affirmed.