531 A.2d 1383

**Herbert C. PETTICORD, Jr., Appellant,**

v.

**John P. JOYCE, Prothonotary, Appellee.**

Supreme Court of Pennsylvania.

Oct. 15, 1987.

Reargument Denied Jan. 19, 1988.

Michael F. Fives, Ron Thurner, Conway & Fives, Pittsburgh, for appellant.

James R. Fitzgerald, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Herbert C. Petticord, Jr., appeals by allowance Superior Court's Order[1] (Wieand, J., dissenting) affirming the Allegheny County Court of Common Pleas' Order sustaining the preliminary objections of Appellee, John P. Joyce, Prothonotary, and dismissing Appellant's complaint. The issues presented for our consideration in this appeal are:

1) whether a Prothonotary is liable for damages resulting from the issuance of an erroneous No-Lien Certificate which was issued by the Prothonotary's duly authorized deputy under the Prothonotary's name and signature; and

2) whether the Prothonotary's authority to issue Certificates of Judgment is limited only to cases involving a change of name pursuant to 54 Pa.C.S. § 701; 54 Pa.C.S. § 101, Note?[2] For the reasons set forth herein, we reverse.

1. *Herbert C. Petticord, Jr. v. John P. Joyce, Prothonotary,* 346 Pa. Superior Ct. 640, 499 A.2d 404 (1985).

2. Appellee attempts to raise the issue of whether the Prothonotary is immune from liability under the Political Subdivisions Tort Claims Act. This affirmative defense, however, was not raised by preliminary objection, answer, or reply and will not be considered in the appeal. See, Pa. R.C.P. 1030 and 1032.

There is no factual dispute in this case. During the summer of 1981, Appellant was contemplating the purchase of real estate located in Allegheny County. Prior to entering into an agreement with the vendor of the property, Ms. Helen Hulbert, Appellant sought to determine whether any judgments had been entered against the vendor or her property which would impair his ownership interest in the realty. Appellant went to the Prothonotary's Office and asked the Deputy Prothonotary to make a search of the records of the Court of Common Pleas of Allegheny County for any judgment that may have been on record against Ms. Hulbert or the property. The Deputy Prothonotary made a search, collected a fee of $15.00, and issued a certificate which stated:

I, JOHN P. JOYCE Prothonotary of the Courts of Common Pleas in and for the County and State aforesaid, do certify that, having made examination of the Records in said Courts containing Judgments, I find no judgments entered thereon for the last five years, remaining open and unsatisfied against: Helen M. Hulbert, 1300½ Nobels Lane Pgh., PA. 15210 from January 2, 1976 to July 30, 1981.

WITNESS my hand and the seals of said Courts, at Pittsburgh, the 31st day of July, 1981.

/s/ John P. Joyce Prothonotary

By /s/ Raymond Serroo Deputy

The certificate bears the signature of John P. Joyce, Prothonotary, as affixed by Raymond Serroo, his duly appointed deputy.

Appellant, relying on the certificate as a correct representation that no judgment had been entered against Ms. Hulbert or her property during the preceding five years, which remained open and unsatisfied, entered into a purchase agreement with Ms. Hulbert on August 4, 1981. In January, 1982, after Appellant had purchased the property, he was informed by the United States Department of Hous-

ing and Urban Development that there was a lien against the property in the amount of $13,415.17. Further, he was advised that he was required to pay off the lien or the property would be subjected to foreclosure proceedings by the holders of the lien. This judgment had been entered against the property in the official records of the Court of Common Pleas of Allegheny County on December 18, 1978, which date was within the period covered by the certificate.

On March 16, 1984, Appellant commenced a civil action in negligence against Appellee, as Prothonotary of the Court of Common Pleas of Allegheny County. Appellee filed preliminary objections alleging that the complaint was not specific and that it failed to state a cause of action upon which relief could be granted. On October 2, 1984, the Court of Common Pleas issued an Order sustaining Appellee's preliminary objections in the nature of a demurrer and dismissing Appellant's complaint. The basis of this decision was the court's determination that "the Prothonotary is liable for the negligent acts of the servants, agents, and employees of his office only if he directed that the acts be done ... [and] that the Prothonotary is authorized to issue certified judgment or lien searches only for the purposes referred to by statute...."

Appellant filed a timely appeal to the Superior Court which affirmed (Wieand, J., dissenting) relying on *Commonwealth v. Roberts*, 392 Pa. 572, 141 A.2d 393 (1958). The Superior Court concluded that the deputy was not acting within the scope of his duty under the direction of the Prothonotary, because the Prothonotary had no power to perform the act which was negligently performed, and that the Prothonotary was not liable for the act of his deputy.

We granted Appellant's Petition for Allowance of Appeal to consider the limits of the duties and authority of the Prothonotary in issuing certification of his records showing judgments and liens, and the liability of the Prothonotary

and his duly authorized deputies for damages sustained as a result of their negligence. The question of the duties of the Prothonotary with regard to the certification of his records has not been addressed by this Court since the enactment of the Judicial Code, 42 Pa.C.S. § 2737,[3] which provides in relevant part:

The office of the prothonotary shall have the power and duty to:

.     .     .     .     .

(2) affix and attest the seal of the court or courts to all the process thereof and to the certifications and exemplifications of all documents and records pertaining to the office

.     .     .     .     .

(6) exercise such other powers and perform such other duties as may now or hereafter be vested in or imposed upon the office by law....

Appellant argues that the Superior Court's holding that the only instance where the Prothonotary is authorized by law to issue a search or lien certificate is in conjunction with the change-of-name statute is clearly contrary to the prior decisions of this Court in *Saylor v. Commonwealth*, 1 Sadler 535, 5 A. 227 (1886); *Siewers v. Commonwealth*, 87 Pa. 15 (1878); *Ziegler v. Commonwealth*, 12 Pa. 227 (1849); and *M'Caraher v. Commonwealth*, 5 Watts & S 21 (1842). We agree.

The facts of *Ziegler* are very similar to the facts of the instant case. There, the Plaintiff requested the Prothonotary of Butler County to make a search of the records for any judgments against the vendor of a piece of realty. The Prothonotary issued a certificate indicating only one judgment against the property. Subsequent to plaintiff's purchase of the property, it was discovered that there was

3. Act of July 9, 1976, P.L.586, No. 142, § 2 effective June 27, 1978, as amended, April 28, 1978, P.L.202, No. 53, § 10(23), effective June 27, 1978.

another judgment which had not been reported in the certificate, and which he was required to pay. Plaintiff sued the Prothonotary who raised the defense that there was no act of the assembly which made it the duty of the Prothonotary to make searches and give certificates of liens of judgments. With regard to such duty, the *Ziegler* court stated:

> In Pennsylvania it has ever been a portion of the duty of a prothonotary; it is an incident to his office as a keeper of the records of the county. The fee bill gives him compensation for searches and for certificates. He is the fit person to make such examinations, and the only person that the common law of the State recognises (sic) for that purpose, and responsible for the safe keeping of the records and papers of his office.

*Id.,* at 228. In *Siewers, supra,* the court stated:

> Among other duties of the prothonotary is that of making searches for judgments and giving his certificate of the result of such search, for any person who may choose to apply to him therefor, and pay him his fee allowed by law. In the accuracy and truthfulness of such search and certificate the prothonotary is responsible to the person for whom it is made.

*Id.,* at 17.

And in *M'Caraher, supra,* in holding that the Recorder of Deeds had the duty of making searches for mortgages and giving certification thereof, the court stated:

> Acts of Assembly [cannot] define the details of duty appurtenant to an office to which the party is appointed. . . . The Act of Assembly contents itself with imposing the obligation to perform the duties of the office, leaving the character and bounds of those duties to be settled by the nature of the office. . . . What . . . are the duties annexed by law to any office, which the officer thus undertakes to faithfully discharge? . . . The solution of this question must rest . . . from a consideration of the nature and character of the office, and a determina-

tion of what constitutes essential or vital parts of it.... Whatever constitutes an essential or vital part of the office, so that without it the design and object of the office cannot be attained, must necessarily be ranked amongst the duties which the officer is bound to fulfill.

*M'Caraher*, at 25–26.

The court observed that "[n]o stronger evidence can be given of the duty of an officer, than that the law gives him a fee for the performance of it." *Id.* at 26.

■ Section 2737 of the Judicial Code did not change the powers and duties of the Prothonotary as set forth in the above cited cases. Nor did the Legislature limit the powers of the Prothonotary to statutory law as it clearly could have done. The common law of Pennsylvania has always been that the Prothonotary has the power to make searches and issue certifications and exemplifications of the documents and records in his office without regard to the purpose for which such certification is obtained. Superior Court's determination that the Prothonotary is authorized to issue a no-lien certificate only in a change-of-name context is contrary to the provisions of 42 Pa.C.S. § 2737 and the historic interpretation of the common law duties of the Prothonotary.

Appellee's contention that the Appellant's request for the no-lien certification was an attempt to require the Prothonotary to provide title insurance is clearly without merit. Appellant did not request title insurance, nor did he allege that there is a defect in his title. Appellant merely requested that the Prothonotary conduct a search of his records concerning judgments or liens against the property in question and issue a certificate under the seal of the court certifying that there were no such judgments or liens in their records. This is by no means considered a title search, nor is it a request for title insurance. Procurement of title insurance would have required an examination of numerous records outside of the Prothonotary's office.

The second issue raised by Appellant concerns the liability of the Prothonotary for damages resulting from the issuance of an erroneous no-lien certificate by his duly authorized deputy.

Section 2734(a) of Title 42 Pa.C.S. provides that "... the prothonotary ... shall, either personally, by his deputy or by other duly authorized employees or agents of the office, exercise the powers, and perform the duties by law vested in and imposed upon the prothonotary or the office of the prothonotary." The Prothonotary is also authorized to "appoint and remove such deputies and other administrative staff of the office ... as may be necessary." 42 Pa.C.S. 2735(a). The Prothonotary is also required to post an official bond which "shall be conditioned upon the faithful discharge by the county officer, his deputies, clerks, assistants and appointees, of all trusts confided in him by virtue of his office, upon the faithful execution of all duties required of him by virtue of his office, ..." 16 Pa.C.S. § 3421.

In *Siewers, supra,* this Court stated: "In the accuracy and truthfulness of such search and certificate the Prothonotary is responsible to the person for whom it is made." *Id.* at 17. The Superior Court determined that the Prothonotary, in the instant case, had neither done the act, nor authorized nor commanded that it be done. Therefore, he was not liable. Under the Superior Court's interpretation, the Prothonotary would have no liability for any of the acts performed by his office. Since in most large counties the Prothonotary does not perform any of the duties of his office, he is, therefore, effectively immune to suit by citizens of the Commonwealth from any damage arising from the negligent failure to perform his duties properly.

■ In dismissing Appellant's complaint, both the trial court and the Superior Court relied on *Commonwealth v. Roberts, supra,* for the proposition that a public officer is not liable for the negligence of his official subordinates,

unless he commanded the act to be done. In the instant case, the Prothonotary had provided printed forms, a fee bill, signed his name to the certificates, and provided them to his deputy, and authorized their use. By his own act, the Prothonotary made it possible for an erroneous no-lien certificate to be issued under his name and the authority of his office. Moreover, a close reading of the *Roberts* decision reveals that it is not controlling of the issues presented in this case.

In *Roberts,* this Court held that the Prothonotary was not liable to a judgment creditor who had been damaged by the negligent failure of a clerk to index a judgment properly. The underlying statutory provision in effect at that time was the General County Law, Act of May 2, 1929, P.L. 1278, Art. III, Section 224, which authorized the Prothonotary to "appoint one first deputy, to act in the case of the death or resignation of his principal or when the office shall become vacant from other causes." By contrast, 42 Pa.C.S. § 2734(a), which was in effect at the time the events in the instant case occurred, authorizes the Prothonotary to appoint deputies who shall "exercise the powers and perform the duties by law vested in and imposed upon the prothonotary...." The General County Law authorized a deputy to act only in the absence of the Prothonotary. *Roberts* involved a clerk who was not clothed with statutory authority to exercise the powers and perform the duties of the Prothonotary. It did not involve a deputy who *was* statutorily authorized to perform the duties of the Prothonotary or the office of the prothonotary. Further, it did not involve a certification under the personal signature of the Prothonotary and under the authority of his office, but merely the recording of a judgment by a clerk. As Judge Wieand so cogently pointed out in his dissenting opinion:

> The Prothonotary's active participation is more apparent when it is viewed against the majority's determination that there was no authority in law for the Prothonotary to sell lien certificates to the public. If the Prothonotary

had no authority to issue lien certificates, but nevertheless distributed certificates bearing his signature to subordinates with authority to make lien searches and distribute the same upon payment of a fee, it is difficult to justify a rule which shields him from liability for damages caused by a certificate which negligently failed to reveal judgment liens of record.

Dissenting Opinion at 3.

For the foregoing reasons, the decision of the Superior Court is reversed. We reinstate Appellant's Complaint and remand for further proceedings consistent with this opinion.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. In this case a deputy, acting at the request of the appellant, issued a certificate of the prothonotary certifying that an examination of the public records of the office had been made, and that for the period from January 2, 1976 to July 30, 1981 there were no open or unsatisfied judgments of record against Helen Hulbert, 1300 1/2 Nobles Lane, Pittsburgh, Pennsylvania.[1] The deputy issued the certification on prothonotary's form No. 33 under the signatures of the prothonotary and the deputy, and under the seal of the prothonotary. Both of the signatures and the seal were affixed to the certificate by the deputy. The appellant paid a fee of $15.00 for the certification.

The certification that there were no open judgments for the period from January 2, 1976 to July 30, 1981 was erroneous. After the appellant purchased the 1300 1/2 Nobles Lane real estate, he received notice of a lien against that property in favor of the U.S. Department of Housing and Urban Development in the sum of $13,415.17. An

---

1. After receiving the prothonotary's certification, the appellant entered into an agreement with Helen Hulbert to purchase the property at 1300 1/2 Nobles Lane.

examination of the judgment docket in the prothonotary's office revealed that the lien was recorded on December 18, 1978, squarely within the period certified to be free of unsatisfied and open judgments.

The appellant's suit seeks to hold the prothonotary liable for the erroneous certification made by the deputy. In order to find liability on the part of the prothonotary, traditional principles of *respondeat superior* must be applied to render the prothonotary responsible for the negligent acts of the deputy. We have held, however, that in the ordinary course of official business, the doctrine of *respondeat superior* does not apply to the prothonotary, a public official. "The rule in Pennsylvania, as well as in other jurisdictions, is that a public officer is not liable for the negligence of his official subordinates unless he commanded the negligent act to be done." *Orris v. Roberts*, 392 Pa. 572, 141 A.2d 393 (1958).[2] Public servants in the "chain of command" should not be subject to suit on any theory of vicarious liability. *Dubree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978).

The majority, in holding that the prothonotary is liable for the negligent issuance of an erroneous certification by his deputy, cites the nineteenth century cases of *Siewers v.*

**2.** The majority states that *Roberts* is not controlling in that in *Roberts* the clerk who was negligent was not statutorily authorized to perform the duties of the prothonotary. On the other hand, in the instant case the deputy, in issuing the certification, was acting within his statutory authority.

The fact that the authority of the deputy derives from statute and is not defined by the prothonotary is reason enough to hold that the prothonotary is not liable for the negligence of the deputy unless the prothonotary commanded the negligent act to be done. "[T]he rule is founded in considerations of public policy (citation omitted) has long been recognized, and is one of general application. The distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately, paid by him and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words, whether the situation of the inferior is that of a public officer or a private servant.' In the former case the official superior is not liable for the inferior's acts, in the latter he is ..." *Orris v. Roberts* 392 Pa. at 576, 141 A.2d at 395.

*Commonwealth,* 87 Pa. 15 (1878), and *Ziegler v. Commonwealth* 12 Pa. 227 (1849). A reading of *Siewers* and *Ziegler* reveals that in neither case was the issue of *respondeat superior* considered.

J.H. Siewers was the Prothonotary of Carbon County and the court found that he *personally* made the erroneous certification for which he was held liable. In finding Prothonotary Siewers liable, the court cited the earlier case of *Ziegler v. Commonwealth,* supra.

Jacob Ziegler was the prothonotary of Butler County and, although the court opinion does not specifically say so,[3] it is entirely likely that in 1849 the Prothonotary Ziegler had no employees and issued the erroneous certification himself. This likelihood is made clear by the fact that the court opinion discusses the case in terms of the prothonotary making the search and issuing the certification. In addition, the doctrine of *respondeat superior* was not mentioned by the court.

The prothonotary is always liable for any negligence of his own, or for negligent acts of his subordinates that he orders to be done. The prothonotary, however, has no liability for the negligence of a deputy who was not acting at the command of the prothonotary. In *DuBree v. Commonwealth, supra.,* we said:

> "[W]e believe it appropriate to protect from the possibility of suit a public servant who has not himself engaged in actionable conduct."

481 Pa. at 545, 393 A.2d at 295. I see no reason to abandon that principle, or to deviate from it in this case. I would affirm the order of the Superior Court.

**3.** The opinion, written by Justice Burnside, starts with the parenthetical phrase "(After stating the case)". In the second paragraph of the opinion the following bracketed sentence appears: "[His honour here stated the facts]". Apparently, although Justice Burnside recited the relevant facts of the case, those facts were not specifically set forth in detail in the published opinion.