Eli RAITPORT

v.

PROVIDENT NATIONAL BANK, James Tracey, III, W. R. Solvibile, Richard W. Hopkins, Walter M. Dinda, Alan Cooper, Americo V. Cortese, Prothonotary, A. Smukler, Edward Kelly, Joseph A. Sullivan, Sheriff, Mansfield Carrafiello, Kolen & Lerch, Joseph S. Kolen, jointly, Individually or in alternative.

Civ. A. No. 76–3572.

United States District Court,
E. D. Pennsylvania.

April 12, 1978.

Eli Raitport, pro se.

Mark Sendrow, Philadelphia, Pa., for Smukler and Kelly.

Jonathan Vipond, III, Philadelphia, Pa., for Cortese, Dinda, Hopkins and Cooper.

John R. Howland, Philadelphia, Pa., for Kolen & Lerch, and Joseph S. Kolen.

Sheldon C. Jelin, Philadelphia, Pa., for Provident National Bank and Tracey.

Gary W. Calvin, Philadelphia, Pa., for Solvibile.

Michael N. Silver, Asst. City Sol., Philadelphia, Pa., for Sullivan and Carrafiello.

## OPINION

LUONGO, District Judge.

Eli Raitport filed the complaint in this action pro se, seeking both damages and injunctive relief under the 1871 Civil Rights Act, 42 U.S.C. §§ 1983, 1985 (1970), and under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976). The defendants— Provident National Bank and its counsel, various state and local government officials, several private individuals, and a local real estate firm—are linked by reason of their involvement in the events leading up to a sheriff's sale on December 6, 1976, at which a house owned by Raitport was sold to the high bidder. The governmental defendants, who have filed no answers, now move to dismiss the complaint for failure to state a claim, asserting absolute "quasi-judicial" immunity. Fed.R.Civ.P. 12(b). *See generally Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (origin of "quasi-judicial" in this context). In addition, all but one of the private defendants seek dismissal of the complaint for failure to state a claim. For the reasons hereafter stated, I conclude that the complaint must be dismissed as to some, but not all, of the governmental defendants, and as to some, but not all, of the private defendants.

Taking as true all the material allegations of Raitport's rather sketchy pro se complaint, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam), the facts in this case may be summarized as follows. In 1975, Provident National Bank (Provident) brought an action in assumpsit against Raitport in the Court of Common Pleas of Philadelphia County.

The amount demanded was "approximately $4,000." Complaint ¶ 6. Raitport in turn filed an answer and various counterclaims totalling more than $20,000, this amount "clearly appearing on the face of the counterclaims." *Id.* On June 21, 1976, the prothonotary, defendant Cortese, nevertheless docketed a certificate of readiness executed by Provident's counsel, defendant Tracey, which falsely stated that the amount in controversy did not exceed $10,000. *See generally* C.P.Phila.R. 150(B)(11). Based on this representation, and in accordance with court rules, the case then was submitted to a panel of three attorneys voluntarily serving as arbitrators. *See generally* C.P.Phila.R. 180; Pa.Stat.Ann. tit. 5, § 30 (Purdon Supp. 1977) (enabling legislation). Raitport received notice of a hearing before the panel, but he declined to attend, believing that the panel lacked jurisdiction because the actual amount in controversy exceeded $10,-000. At the hearing, on October 6, 1976, the arbitrators—defendants Hopkins, Dinda, and Cooper—found in favor of Provident both on its original complaint and on Raitport's counterclaims. Defendant Cortese entered judgment on this award on November 1, 1976. *See generally* Pa.Stat. Ann. tit. 5, §§ 53, 54 (Purdon 1963).

Provident then obtained a writ of execution from defendant Cortese. *See generally* Pa.R.Civ.P. 3102, 3103. This writ ordered defendant Sullivan, the Sheriff of Philadelphia County, to sell a house owned by Raitport and leased by him to Scientronic Corporation. Sullivan posted on the subject property notice of the forthcoming public sale. *See generally* Pa.R.Civ.P. 3129. (On November 28, 1976, Raitport filed in the Court of Common Pleas a motion to strike both the judgment in favor of Provident and the writ of execution. The record does not disclose what action, if any, the court took on this motion.) On December 1, 1976, Raitport delivered to Sheriff Sullivan a claim that the subject property could not be sold by reason of art. I, § 17 of the Pennsylvania Constitution,[1] and, on behalf of Scien-

tronic Corporation, a property claimer, which in certain circumstances would mandate that execution be stayed. *See* Pa.R. Civ.P. 3121(a)(3) (execution shall be stayed "pending disposition of a property claim filed *by a third party*") (emphasis supplied). On December 3, 1976, Raitport telephoned the sheriff's office to press his contention that the sale could not lawfully be carried out. Defendant Carrafiello, who evidently is a deputy sheriff, advised Raitport that the sheriff's office "[does] not apply the law." Amendment to the Complaint (Document No. 9), ¶ 35. "On December 6, 1976, the house was sold by Sheriff [Sullivan] to [defendant] Joseph Kolen and/or [defendant] Kolen & Lerch." *Id.* ¶ 36.

One month prior to the sale, Raitport attempted to file criminal complaints against defendants Tracey (Provident's counsel), Solvibile, and Hopkins, Dinda, and Cooper (the three arbitrators). *See generally* Pa.R.Crim.P. 133(B). Defendant Smukler, an assistant district attorney for Philadelphia, "arbitrarily and capriciously" refused to approve the complaints, thereby preventing the issuance of process against those persons. Complaint ¶ 27. In addition, defendant Kelly, a detective assigned to Smukler's complaint-screening unit at the district attorney's office "interfered" with Raitport's attempt to file criminal complaints. *Id.* ¶ 30.

Based largely on the foregoing facts, along with some conclusory allegations of conspiracies among the defendants, Raitport asserts claims under both the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 (1976), and the 1871 Civil Rights Act, 42 U.S.C. §§ 1983, 1985 (1970). All eight governmental defendants move to dismiss the complaint for failure to state a claim, principally on the ground of absolute "quasi-judicial" immunity. The private defendants also seek dismissal of the complaint. In considering these motions, I will deal first with the civil rights claims, and then turn to the antitrust claims.

---

1. "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immuni-

ties, shall be passed." Pa.Const. art. I, § 17 (emphasis in original).

## SECTION 1983

Raitport's civil rights claims are based in part on section 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

As I noted earlier, Raitport seeks both damages and injunctive relief under section 1983. For the sake of convenience, I will first consider each governmental defendant's claim of immunity from a section 1983 action for damages, and then consider whether an action for injunctive relief may be maintained. *See generally Wood v. Strickland*, 420 U.S. 308, 315 n. 6, 95 S.Ct. 992, 997, 43 L.Ed.2d 214 (1975) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."); *Briggs v. Goodwin*, 569 F.2d 10, 15 n. 4 (D.C. Cir. 1977) (majority opinion), 46 n. 62 (Wilkey, J., dissenting) (same). Finally, I will examine the contention, advanced by one of the private defendants who is being sued under section 1983, that the complaint fails to state a claim under that section as to him.

### Damages

With respect to the section 1983 action for damages, the governmental defendants seek to avail themselves of the doctrine of judicial immunity, as set forth in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[2] *Ray* was a section 1983 action brought by civil rights demonstrators against several police officers who arrested them and against Spencer, "a municipal police justice" who tried, convicted, and sentenced the demonstrators. 386 U.S. at 549, 87 S.Ct. 1213. The Court of Appeals for the Fifth Circuit set aside a jury verdict against the officials, and the Supreme Court affirmed. Chief Justice Warren, writing for seven other Justices, stated, in the language that is most pertinent here:

"We find no difficulty in agreeing with the Court of Appeals that Judge Spencer is immune from liability for damages for his role in these convictions. The record is barren of any proof or specific allegation that Judge Spencer played any role in these arrests and convictions other than to adjudge petitioners guilty when their cases came before his court. Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' [Citation omitted.] It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in *Tenney v. Brandhove*, 341

---

2. *Ray* is discussed critically in Note, *Liability of Judicial Officers Under Section 1983*, 79 Yale L.J. 322 (1969).

U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

386 U.S. at 553–55, 87 S.Ct. at 1217 (footnotes omitted).

Although not one of the governmental defendants in this case is a judge, *Pierson v. Ray* is significant nonetheless. Absolute "quasi-judicial" immunity from section 1983 damages liability has been accorded to officials other than judges. *See, e. g., Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976) (prosecutor's conduct "in initiating a prosecution and in presenting the State's case"); *Bauers v. Heisel*, 361 F.2d 581, 586–97 n. 7 (3d Cir. 1966) (en banc) (collecting cases), *cert. denied*, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); discussion *infra*. Thus, the resolution of this aspect of the motions to dismiss will require an examination of the precedents involving various kinds of officials.

To begin with, defendants Hopkins, Dinda, and Cooper—the three arbitrators who found against Raitport—claim the benefits of "quasi-judicial" immunity. They emphasize that as to cases within their jurisdiction, the General Assembly of Pennsylvania has clothed them with powers strikingly similar to those exercised by a trial judge. *See* Pa.Stat.Ann. tit. 5, § 121 (Purdon 1963); C.P.Phila.R. 180, Rule III(E). I note, too, that a panel of the Third Circuit previously held an arbitrator to be immune on the ground that "he was performing quasi-judicial duties." *Cahn v. International Ladies' Garment Union*, 311 F.2d 113, 114 (3d Cir. 1962) (per curiam); *accord, Hill v. Aro Corp.*, 263 F.Supp. 324 (N.D.Ohio 1967). *See also* McCormack & Kirkpatrick, *Immunities of State Officials Under Section 1983*, 8 Rut.-Cam.L.J. 65, 78–79 (1976) (referees and masters shielded by judicial immunity). Raitport, however, contends, that immunity

is unavailable to these three defendants because their award was rendered in a case where the amount in issue exceeded ten thousand dollars. Thus, he argues, the arbitrators acted beyond their jurisdiction, and "[i]t is elementary that in order to enjoy judicial immunity the officer must act within [his] jurisdiction." Plaintiff's Memorandum in Opposition (Document No. 16) at 1.

■ The issue is not so simple, however. Even where a judge is concerned, immunity is forfeited only for actions performed in "the clear absence of all jurisdiction over the subject-matter." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871); *see Stump v. Sparkman*, 435 U.S. ——, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Where an arbitrator is concerned, moreover, the single reported decision on this point holds that immunity attaches even where a litigant calls into question the arbitrator's jurisdiction. *Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977). Judge Swygert noted in that decision, and I agree, that "individuals . . . cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." 552 F.2d at 781. Finally, the arbitrators' immunity does not deprive Raitport of a remedy for any wrong he may have suffered; it simply requires that he pursue his remedies against Provident, his "real adversary," rather than against these three defendants. *Id.* Accordingly, I conclude that Hopkins, Dinda, and Cooper are absolutely immune from liability for damages under section 1983.

Defendant Cortese, the prothonotary of the Court of Common Pleas of Philadelphia County, also asserts absolute "quasi-judicial" immunity from liability for damages. As I read the complaint, however, Raitport's civil rights claims against Cortese are based only on section 1985, and not on section 1983. I will consider the issue of immunity under section 1985 shortly.

Defendants Smukler and Kelly, an assistant district attorney and a detective, respectively, also assert "quasi-judicial" im-

munity from damages under section 1983. They rely principally upon *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), in which the Supreme Court held that a state prosecutor is absolutely immune from liability for damages under section 1983 for his conduct "in initiating a prosecution and in presenting the State's case." 424 U.S. at 431, 96 S.Ct. at 995. *See also Brawer v. Horowitz*, 535 F.2d 830 (3d Cir. 1976) (like immunity accorded federal prosecutor in action brought directly under the fifth amendment). I note that the *Imbler* Court expressly declined to consider whether immunity also attaches to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." 424 U.S. at 430–31, 96 S.Ct. at 995 (footnote omitted).

Raitport seeks to impose liability on Smukler for his refusal to approve Raitport's private criminal complaint against several of the other defendants in this case. It is undisputed that Smukler "is an Assistant District Attorney in Philadelphia County and is responsible for screening and approving [private criminal complaints]." Defendants' Memorandum of Law (Document No. 21) at 1. *See generally* Pa.R.Crim.P. 133(B). Thus, the question here is where Smukler's responsibilities fit in the scheme set out in *Imbler*.

 Without belaboring the point, it seems to me that the decision to approve or disapprove a private criminal complaint fits squarely within the broader function of "initiating a prosecution," and therefore it cannot subject a prosecutor to civil liability for damages under section 1983. *Approval* of a private criminal complaint provides a foundation for the issuance of process against the person or persons named therein, Pa.R.Crim.P. 134, and is specifically recognized as one means of instituting proceedings in a non-summary criminal case. Pa.R.Crim.P. 101; *see also* Pa.R.Crim.P. 51(A)(4) (summary criminal cases). *Disapproval* of such a complaint, unless overturned by a common pleas court judge, Pa.R.Crim.P. 133(B)(3)(ii), amounts to a deci-

sion not to institute such proceedings. It would be anomalous to hold that because *Imbler* spoke only of *"initiating* a prosecution," the prosecutor who approves a complaint is immune while the prosecutor who disapproves a complaint is subject to civil liability for damages. (Emphasis supplied.) Just as the prosecutor who initiates a criminal case requires protection from the defendant who "transform[s] his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate," *Imbler, supra*, 424 U.S. at 425, 96 S.Ct. at 992, so the prosecutor who concludes that prosecution is unwarranted requires protection from the complainant whose excessive zeal for invoking the criminal process blinds him to any aspects of the case that counsel against prosecution. *Cf. Turack v. Guido*, 464 F.2d 535 (3d Cir. 1972) (per curiam) (district attorney immune from damage suit arising out of refusal to institute criminal proceedings against a third party). Moreover, to accord absolute immunity only to the decision to prosecute would be to run the risk of subtly encouraging that decision, rather than the decision not to prosecute, in some cases. Because I believe that allowing only "one-sided" immunity might thus contaminate the prosecutorial decision-making process, I hold that disapproval of a criminal complaint fully partakes of the immunity recognized in *Imbler*. Accordingly, defendant Smukler is absolutely immune from liability for damages under section 1983.

 With respect to defendant Kelly, a detective assigned to Smukler's unit, the immunity issue cannot be resolved on the present record. The complaint contains the following allegations regarding Kelly:

"On November 4, 1976, plaintiff called A. Smukler for appointment purport to file a criminal complaint. A. Smukler advised plaintiff that he does not need appointment, just proceed through detective at the desk in room 522. On November 5, 1976, plaintiff approached detective at the desk with request to file a criminal complaint against R. W. Hopkins, W. M. Dinda and Alan Cooper. Edward Kelly,

Chief of that detectives' office interfered and instructed the detective not to process the complaint."

Complaint ¶ 30.

Unfortunately, the memoranda of law filed on behalf of Kelly do not address the nature of Kelly's responsibilities within Smukler's unit, nor do they shed any light on the events alleged in the complaint. I cannot determine at this stage of the case whether Kelly is entitled to absolute immunity from civil liability for his actions vis-a-vis Raitport on November 5, 1976. *See Hazo v. Geltz*, 537 F.2d 747, 751 (3d Cir. 1976). Accordingly, I cannot dismiss the complaint as to defendant Kelly on that ground.[3]

With respect to Sheriff Sullivan and Deputy Sheriff Carrafiello, I am again constrained by *Hazo v. Geltz, supra*, to defer resolution of the immunity issue. In *Hazo*, a panel of the Third Circuit held that the degree of immunity enjoyed by a deputy sheriff in regard to certain activities depends in part upon the degree of "direct judicial supervision" over those activities. 537 F.2d at 751. The plaintiff in *Hazo* alleged that she was wrongfully denied the opportunity to bid when, following a default judgment, her personal property was offered at a sheriff's sale; she also complained of defective service of process and inadequate public notice regarding the sale. The district court held that the deputy sheriff was entitled to absolute immunity and dismissed the complaint. On appeal, Judge Biggs, writing for the panel, emphasized the importance of direct judicial supervision to a finding of absolute, rather than qualified, immunity:

"As the record now stands, we cannot assess whether Deputy Sheriff Telford's alleged conduct could sustain a cause of action. We do not know to what extent the procedures requiring or allowing the refusal [or acceptance] of the [bid], the type of sale notice, and the service of process are directly supervised and sanctioned by the bench. It may be that these procedures have been developed as a matter of administrative convenience, not under direct judicial supervision. In short, this case *could* be a qualified immunity case."

537 F.2d at 751 (emphasis in original).

The court of appeals accordingly remanded the case for the development of an adequate record. *Id.*

*Hazo* is squarely controlling here, for Raitport, too, is challenging the lawfulness of a sheriff's sale, albeit one involving real, rather than personal, property. Until the parties address themselves to the degree of judicial supervision over Sullivan's and Carrafiello's activities vis-a-vis Raitport, I simply am unable to determine whether they should be afforded absolute "quasi-judicial" immunity from Raitport's damages claims under section 1983. Thus, I cannot dismiss the complaint as to them on the ground of immunity from suit.[4]

*Equitable Relief*

With respect to "quasi-judicial" immunity from an award of equitable relief under section 1983, it will suffice to say that the law on this issue is unsettled. *Compare, e. g., Law Students Civil Rights Research*

---

**3.** Kelly may well be entitled to qualified, or "good-faith," immunity. *See generally Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 316–22, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 238–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 555–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Economou v. United States Dept. of Agriculture*, 535 F.2d 688, 694–97 (2d Cir. 1976), *cert. granted sub nom. Butz v. Economou*, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977). However, "[t]he fate of an official with qualified immunity depends upon the circumstances and moti-

vations of his actions, as established by the evidence at trial." *Imbler, supra*, 424 U.S. at 419 n. 13, 96 S.Ct. at 989 (citations omitted); *see Scheuer v. Rhodes, supra*, 416 U.S. at 249–250, 94 S.Ct. 1683; *Safeguard Mut. Ins. Co. v. Miller*, 472 F.2d 732, 733–34 (3d Cir. 1973). *But see Procunier v. Navarette, supra* (reinstating district court order granting summary judgment for defendant prison officials on the basis of qualified immunity).

**4.** Both Sullivan and Carrafiello may well enjoy qualified, or "good-faith," immunity, which is quite another matter. See note 3 *supra*.

*Council v. Wadmond,* 299 F.Supp. 117, 123 (S.D.N.Y.1969) (three-judge court), *aff'd on other grounds,* 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (Friendly, J.) ("We fail to perceive what interest would be served by holding federal courts to be powerless to enjoin state officers [from violating plaintiffs' civil rights] simply because some of them are robed and others have been appointed by those who are.") *with, e. g., Conover v. Montemuro,* 477 F.2d 1073, 1094 (3d Cir. 1973) (on rehearing en banc) (Adams, J.) (expressly reserving the question "whether the judicial immunity doctrine is an absolute bar, a partial bar, or no bar at all in § 1983 suits for injunctive relief against state court judges"). *See generally The Supreme Court, 1974 Term,* 89 Harv.L. Rev. 47, 220 n. 4 (1975). I need not pass on this issue, for I am satisfied that Raitport's complaint, even when judged by the "less stringent standards" applicable in pro se cases, alleges no basis for an award of injunctive relief under section 1983. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

█ It is fundamental that "injunctive relief looks to the future." *Dombrowski v. Pfister,* 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). In determining whether an applicant for injunctive relief has sufficiently demonstrated a threat of future harm, moreover, a court should bear in mind that such relief

"may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights . . . ."

*Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3d Cir. 1969).

█ With these basic precepts in mind, an examination of Raitport's complaint reveals no basis whatsoever for injunctive relief. This action was commenced in November of 1976, before Raitport's house had been sold.[5] The complaint was amended shortly after the sale to include additional causes of action arising directly therefrom. Nonetheless the complaint as amended alleges no threatened future injury. Indeed, it does not allege that any of the defendants did, or wrongfully failed to do, *any* act following the sale of Raitport's house some sixteen months ago, or that any of the defendants even threatened to do, or to wrongfully refrain from doing, any act after that date. Thus, I conclude that the amended complaint states no possible basis for injunctive relief under section 1983 as to any of the seven governmental defendants who are being sued under that section.

I cannot dismiss the section 1983 claims for equitable relief, however, without discussing Raitport's motion for a preliminary injunction. This motion is dated November 13, 1976 (although it was not filed until nearly a month later), and so it pre-dates the sale of Raitport's house.[6] The accompanying memorandum of law plainly stated that the threatened harm to which the motion was addressed was the sale of Raitport's house, which Raitport alleged would disrupt the development of an energy-saving device that he had invented. Memorandum of Law, Document No. 8, at 2. I set out in full the prayer for injunctive relief only to show that it deals with the events leading up to the sheriff's sale. Raitport sought an order restraining all defendants from:

"1. Interfering in any manner with plaintiff's development of inventions, demonstration, manufacturing and mar-

---

**5.** Raitport alleges that the defendants conspired to deprive him of unspecified "evidence" relevant to other antitrust actions that he is, or was, pursuing. This evidence apparently was located in the house that was sold by Sheriff Sullivan. Raitport nowhere alleges, however, that any evidence bearing on other legal proceedings is presently in the possession of any of the governmental defendants.

**6.** Raitport's motion was denied by Judge Green, to whom this case was formerly assigned, on December 21, 1976. Judge Green's decision was affirmed by the court of appeals on December 21, 1977. *Raitport v. Provident National Bank,* 565 F.2d 152 (3d Cir. 1977) (judgment order).

keting of the same and any other products, and doing business in general.

2. Interfere with plaintiffs property real, or personal, either tangible or intangible.

3. Making any attempt to extort or collect, or obtain from plaintiff any value real, or personal, either tangible or intangible, unless adjudicated by legally competent court and jury in accordance with Laws of the United States and of the Commonwealth.

4. Interfering with plaintiff's right to justice, thus to bring to trial either criminal or civil any one whom plaintiff accuses in wrongdoing.

5. Filing falsified documents in any court, or to influence against this plaintiff any judge or jurors by any means; or influence any witnesses to testify falsely in adverse interest of this plaintiff.

6. Order may issue to defendant Joseph A. Sullivan, Sheriff and Provident National Bank and James Tracey to cease and desist from further execution of the Writ in any form, sale, posting of Bills, publication and alike.

7. Order may issue to Americo V. Cortese to strike from docket the subject arbitrators award and praecipe for Writ of execution as being illegal."

Although some of the particulars in the prayer for relief, such as paragraphs five and six, are broadly worded, nothing in the record suggests that Raitport was or is threatened with future, i. e., post-sale, harm of the sort suggested in the language just quoted. Accordingly, the complaint will be dismissed for failure to state a claim insofar as it requests equitable relief under section 1983 against the seven governmental defendants who are being sued under that section.

### Failure to State a Claim

Tracey, one of the two private defendants named in Raitport's section 1983 claim, urges that the complaint fails to state a claim as to him. This contention may best be assessed in the context of the specific allegations of the complaint regarding defendant Tracey.

The complaint sets out as the fourth cause of action that Tracey executed and filed with the Court of Common Pleas of Philadelphia County a certificate of readiness, referred to previously, that falsely declared the amount in controversy in the case of *Raitport v. Provident National Bank* to be less than $10,000. (Based on this representation, and pursuant to court rules, the case was then assigned to a panel of arbitrators.) Raitport alleges that Tracey executed and filed this certificate knowing that it was false, and that in doing so he deprived Raitport of due process of law, in violation of section 1983.

In order to prevail under section 1983, however, a plaintiff must show that the defendant acted under color of state law. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); 42 U.S.C. § 1983 (1970). True, a private citizen who acts in concert with state or local officials may in some cases be acting under color of state law for the purposes of section 1983. *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 152 & n. 7, 90 S.Ct. 1598. Raitport's fourth cause of action, however, does not present such a case. It simply alleges that Tracey, acting on behalf of Provident, his client, filed the certificate referred to above with the court of common pleas. "It is established that a private attorney, while participating in the trial of a private state court action, is not acting under color of state law." *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975) (citations omitted). Accordingly, the complaint fails to state a claim under section 1983 as to defendant Tracey, and Raitport's fourth cause of action will therefore be dismissed.

Defendant Solvibile, who is not identified in the complaint, is also named in the fifth cause of action, which is based on section 1983. At oral argument, Solvibile's counsel asserted that these claims were properly subject to dismissal, and he was advised by the court to file a written motion setting out his position. No such motion has been filed to date, however, and so no action can

be taken at this time to dismiss the section 1983 claim against Solvibile.

## SECTION 1985

Raitport's civil rights claims are also based on section 1985, which provides:

"(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Raitport's claims under section 1985 run against all eight governmental defendants, and against all of the private defendants as well. I will initially consider the private defendants' arguments that the complaint fails to state a claim as to them, and I will then turn to the governmental defendants' contentions regarding "quasi-judicial" immunity.

### Failure to State a Claim

Provident National Bank, Tracey, Kolen, and Kolen & Lerch seek dismissal of the section 1985 claims that are directed at them. In considering their arguments, it will be helpful to focus on the factual allegations contained in the complaint.

After recounting the events that transpired up until, but not including, the sheriff's sale, the complaint then alleges, as the third cause of action, that "through a fraudulent procedure all defendants conspired to deprive plaintiff of evidence vital to the anti-trust proceedings in other cases [that] plaintiff, member of class of inventors-entrepreneurs, is maintaining against banks and obligopolies," thereby violating section 1985. I assume, without deciding, that such a conspiracy would, if proven, be actionable under section 1985(2). In any event, the complaint fails to name even a single item of evidence that the defendants have kept from Raitport by conspiring to arrange the sale of his house. Nor does the complaint refer to even a single antitrust action, whether pending or concluded, that has been hindered by the alleged inability to obtain the unspecified "evidence." Under these circumstances, I am unable to say with any confidence that "the claim has some basis in fact." *Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963, 973 (E.D.Pa.1977). Accordingly, the third cause of action will be dismissed as to Provident National Bank, Tracey, Kolen, and Kolen & Lerch for failure to plead any specific facts. *See generally Curtis v. Everette*, 489 F.2d 516, 520–21 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967).

Raitport's *amended* complaint recounts the facts of the sheriff's sale at which his house was sold, and then alleges, as to the sixteenth and nineteenth causes of action, respectively, that Deputy Sheriff Carrafiello and Joseph Kolen, who purchased the house, conspired to deprive Raitport, "as a representative of [the] class of [inventors]," of equal protection and due process, in violation of section 1985. I assume that this cause of action is designed to fall within the "equal protection" or "equal privileges and immunities" clauses of section 1985(3). Accepting for the moment Raitport's charges that the sheriff's sale was illegal, I nevertheless conclude that the section 1985 claims against Kolen must be dismissed. Kolen is alleged to have purchased Raitport's

house—and nothing more. Complaint ¶ 36. The complaint does not allege that Kolen bore any sort of animus toward Raitport, or toward inventors generally, or that he even knew who Raitport was at the time he purchased the house. Nor is it alleged that Kolen intended to deprive Raitport of his constitutional rights by buying the house. The complaint says only that Kolen bought the house, and that he *thereby* took part in a conspiracy with Carrafiello. Again, absent further specific facts, Raitport cannot maintain this claim against Kolen. *See* discussion *supra*. Accordingly, the sixteenth and nineteenth causes of action will be dismissed as to Kolen for want of specific factual allegations.

Kolen & Lerch, the firm to which Mr. Kolen evidently belongs, is also named in the sixteenth and nineteenth causes of action. Raitport alleges that his house was sold by Sheriff Sullivan "to Joseph Kolen and/or Kolen & Lerch." Complaint ¶ 36. Again, as is the case with Kolen, the complaint contains no further allegations as to Kolen & Lerch that would implicate it as a participant in any conspiracy under section 1985(3). These two causes of action will therefore be dismissed as to Kolen & Lerch for want of specific factual allegations.

Defendant Solvibile, who is not identified in the complaint, is also named in the causes of action based on section 1985. At oral argument, Solvibile's counsel asserted that these claims were groundless, and was advised that a written motion setting out his position should be filed. However, no such motion has been filed to date, and there is nothing on which I can rule at this time.

### Damages

With respect to the section 1985 claims, all eight governmental defendants again assert "quasi-judicial" immunity from both liability for damages and equitable relief. Although the Supreme Court has not specifically addressed the issue of immunity in a section 1985 action, I see no reason to treat sections 1983 and 1985 differently in resolving these motions. Indeed, the two provisions, which were for-

merly sections 1 and 2 of the Civil Rights Act of 1871, c. 22, 17 Stat. 13, have been treated identically in this context. *See, e. g., Waits v. McGowan*, 516 F.2d 203 (3d Cir. 1975) (alternative holding); *Sykes v. State of California (Dept. of Motor Vehicles)*, 497 F.2d 197 (9th Cir. 1974); *Barnes v. Dorsey*, 480 F.2d 1057 (8th Cir. 1973); *Bethea v. Reid*, 445 F.2d 1163 (3d Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *Puett v. City of Detroit, Dept. of Police*, 323 F.2d 591 (6th Cir. 1963), *cert. denied*, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964); *Kostal v. Stoner*, 292 F.2d 492 (10th Cir. 1961), *cert. denied*, 369 U.S. 868, 82 S.Ct. 1032, 8 L.Ed.2d 87 (1962). Because sections 1983 and 1985 require identical analyses where immunity is asserted, the conclusions set out earlier in this opinion with respect to liability for damages under section 1983 are directly applicable here. Defendants Hopkins, Dinda, Cooper and Smukler are absolutely immune from liability for damages under section 1985. Defendants Kelly, Sullivan, and Carrafiello, on the other hand, may or may not enjoy absolute immunity; resolution of this issue requires a fuller factual record.

Defendant Cortese, the prothonotary, is being sued under section 1985 but not under section 1983, and so the immunity issue he raises must be treated separately here. Raitport's complaint alleges (1) that Cortese docketed Provident's certificate of readiness, which contained a patently false representation that the case involved less than $10,000, (2) that Cortese docketed the arbitrators' award, notwithstanding that the arbitrators lacked jurisdiction over the case because the actual amount in controversy was more than $10,000, (3) that Cortese issued and docketed a judgment in favor of Provident, based on the arbitrators' award, and (4) that Cortese issued a writ of execution based on that judgment. I will assume, and Cortese does not dispute, that these allegations, taken together with certain other allegations in the complaint, state a claim against Cortese for conspiring to deprive Raitport of his civil rights. The immunity issue thus is squarely presented. I conclude, based upon a careful examination of the still-developing case law on judicial and "quasi-judicial" immunity, that Cortese is not absolutely immune from liability for damages under section 1985.

▮ To begin with, questions concerning an official's immunity under the federal civil rights statutes may not be resolved simply on the basis of judicial notions of sound public policy. As Justice Powell's opinion for the Court in *Imbler v. Pachtman, supra*, noted,

"[O]ur earlier decisions on § 1983 immunities were not products of judicial fiat that officials in different branches of government are differently amenable to suit under § 1983. Rather, each was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it. The liability of a state prosecutor under § 1983 must be determined in the same manner."

424 U.S. at 421, 96 S.Ct. at 990.

*Accord, Carey v. Piphus*, 435 U.S. 247, 258 n. 13, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Procunier v. Navarette*, 434 U.S. 555, 568, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (Stevens, J., dissenting); *Wood v. Strickland*, 420 U.S. 308, 318–21, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (by implication). *But cf. Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (qualified immunity accorded to state prison officials without any discussion of their status at common law). Accordingly, defendant Cortese's claim to absolute immunity must be assessed in light of the common-law background.

▮ The prothonotary, of course, "is merely the clerk of the Court of Common Pleas." *Smith v. Safeguard Mut. Ins. Co.*, 212 Pa.Super. 83, 86, 239 A.2d 824, 826 (1968). At common law, court clerks enjoy no immunity with respect to the performance of ministerial duties, such as the docketing of papers of the issuance of writs.[7]

---

7. The ministerial nature of the acts attributed to Cortese in the complaint is undisputed. The prothonotary is the functionary whose job it is to docket various papers, including certificates

Rather, "liability attaches only for nonperformance or improper performance of the required act." McCormack & Kirkpatrick, *Immunities of State Officials Under Section 1983*, 8 Rut.—Cam. L.J. 65, 76 (1976); *see McCray v. Maryland*, 456 F.2d 1, 4 (4th Cir. 1972); W. Prosser, Law of Torts § 132 at 989–90 (4th ed. 1971). The Pennsylvania decisions regarding prothonotaries are quite clear on this point.[8] Indeed, a statute enacted by the General Assembly of Pennsylvania in 1834, which remains in force to this day, requires prothonotaries, "with one or more [approved] sureties, . . . [to] give a joint and several bond to the commonwealth, in such sum as the governor shall judge sufficient, with condition faithfully to execute the duties of their . . offices." Act of April 14, 1834, No. 164, § 76, 1833–34 Pa.Laws 333, *codified at* Pa. Stat.Ann. tit. 17, § 1481 (Purdon 1962). As one judge observed in an 1886 decision, "[t]here is no principle of law better settled than where a prothonotary makes a mistake in entering a judgment, and the plaintiff sustains a loss, he has a remedy on the prothonotary's official bond." *Saylor v. Commonwealth*, 1 Sadler 535, 541–42 (C.P. Lehigh County), *aff'd per curiam on opinion of lower court*, 1 Sadler 535, 545, 5 A. 227 (Pa.Sup.Ct.1886); *see* cases cited *supra* note 8. At common law, then, the prothonotary's defense is that he performed his duties properly, not that he is immune from liability. *See* McCormack & Kirkpatrick, *supra*, 8 Rut.—Cam. L.J. at 76–77.

Under the analysis mandated by *Imbler, supra*, and *Wood v. Strickland, supra*, it might be thought that the lack of immunity at common law would foreclose Cortese's claim of immunity under section 1985. *See generally* note 10 *infra*. For in those decisions, as in *Pierson v. Ray, supra*, the Supreme Court framed the immunity issue as whether Congress, in enacting section 1983, sought to abrogate pre-existing common-law immunities enjoyed by various government officials. *Accord, Stump v. Sparkman*, 435 U.S. ——, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Here, by contrast, no common-law immunity existed with respect to prothonotaries, and so this case raises no comparable issue of congressional intent.

Moreover, an examination of the rationale supporting judicial and "quasi-judicial" immunity reveals that Cortese cannot properly claim such protection. *See* McCormack & Kirkpatrick, *supra*, 8 Rut.—Cam. L.J. at 75. As the Third Circuit, sitting en banc, recently stated:

> "The theory justifying immunity from damage claims. . . . [is] that the public interest in the *unfettered exercise of discretionary duties such as legislating, adjudicating, rule-making or budgeting* [is] so paramount that [they] should be performed free of the fear that either the motivation of the responsible officials or the correctness of their decisions could

of readiness. Indeed, the General Assembly of Pennsylvania has enacted a comprehensive schedule of the fees to be collected by the prothonotary of the Court of Common Pleas of Philadelphia County for docketing various papers. *See* Pa.Stat.Ann. tit. 17, § 1589.11 (Purdon Supp. 1977). What is more, the Arbitration Act of 1836, as amended, expressly requires the prothonotary to docket an arbitrator's award. *See* Pa.Stat.Ann. tit. 5, § 53 (Purdon 1963). The same statute further provides that such an award, once docketed, has the full effect of a judgment, whether or not a separate judgment is also issued. *See id.* § 54; *Spang v. Mattes*, 253 Pa. 101, 97 A. 1026 (1916). Finally, the statute also requires the prothonotary to issue a writ of execution based on an arbitrator's award or on a subsequent judgment. *See* Pa.Stat.Ann. tit. 5, § 58 (Purdon 1963). Thus, all the acts of which Raitport complains were

ministerial duties being performed by defendant Cortese.

8. *See, e. g., Wilson ex rel. First Nat'l Bank v. Arnold*, 172 Pa. 264, 33 A. 552 (1896); *Saylor v. Commonwealth*, 1 Sadler 535, 5 A. 227 (1886); *Siewers v. Commonwealth ex rel. Hauseman*, 87 Pa. 15 (1878); *Watson v. Smith*, 26 Pa. 395 (1856); *Ziegler v. Commonwealth*, 12 Pa. 227 (1849); *Bear v. Patterson*, 3 Watts & Serg. 233, 237 (1842) (dictum); *Crutcher v. Commonwealth*, 6 Whart. 340, 348 (1841) (dictum); *Work v. Hoofnagle*, 1 Yeates 506, 508 (1795). *But cf. Commonwealth ex rel. Orris v. Roberts*, 392 Pa. 572, 582, 141 A.2d 393, 398 (1958) (dictum) ("a prothonotary's liability for his own indexing mistake may be open to question") (citing *Prouty v. Marshall*, 225 Pa. 570, 74 A. 550 (1909)).

later be called into question in a suit for damages."

*Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 60 (3d Cir.) (en banc) (emphasis supplied), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

My conclusion regarding Cortese's claim of immunity does not rest on any wooden application of the distinction between discretionary and ministerial duties.[9] As I read *Imbler v. Pachtman, supra,* the pertinent inquiry is whether, if a particular official were not accorded absolute immunity, the resulting exposure to litigation might lead him to "shade his decisions instead of exercising the independence of judgment required by his public trust."[10] 424 U.S. at 423, 96 S.Ct. at 991; *cf. McCray v. Maryland,* 456 F.2d 1, 4 (4th Cir. 1972); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 392, 447 F.2d 358, 362 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) ("The proper approach is to consider the precise function at issue, and to determine whether an officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct.") (footnote omitted). Quite clearly, the prothonotary's responsibilities that are involved here—docketing papers and issuing writs—do not require "independence of judgment" even approaching that required of the state prosecutor in *Imbler, supra,* or of the state judge in *Pierson v. Ray, supra.* The same conclusion obtains under the traditional discretionary-ministerial distinction:

"Since the shield of absolute immunity diverts otherwise applicable sanctions of law, its extension to lesser judicial personnel is warranted only when the particular official activity requires the exercise of discretion as broad as that given to a judge. If the conduct in question is a purely ministerial act, such as the filing of papers, then the reasons for [absolute] immunity do not exist and the officer can be held liable . . . . Thus, it cannot be said that court personnel share judicial immunity; rather, their actions must be tested by the common-law, objective good-faith defense applicable to other state officers."

McCormack & Kirkpatrick, *supra,* 8 Rut. —Cam. L.J. at 75 (footnotes omitted); *accord, McCray v. Maryland,* 456 F.2d 1, 3 (4th Cir. 1972); *Norwood v. Solomon,* 431 F.Supp. 380, 382 (E.D.Mo.1977).

Thus, with respect to the precise duties at issue here, prothonotaries enjoyed no immunity at common law, and the rationale underlying the modern cases on immunity under the federal civil rights statutes offers no support for Cortese's claim of immunity. There remain to be considered, however, several decisions in this circuit that do lend some support to Cortese's claim.

I note that on two occasions, federal courts in the Third Circuit have found prothonotaries to be absolutely immune from liability for damages in civil rights actions. *See Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (Prothonotary of Supreme Court of Pennsylvania); *Ginsburg v. Stern,* 125 F.Supp. 596 (W.D.Pa.1954) (Prothonotary of Superior Court of Pennsylva-

9. *See generally Briggs v. Goodwin,* 569 F.2d 10, 16 n. 7 (D.C.Cir. 1977); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 391–392, 447 F.2d 358, 361–62 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); W. Prosser, Torts § 132 at 988–90 (4th ed. 1971); note 7 *supra.*

10. Significantly, the Court in *Imbler* reached this question only after it found that prosecutorial immunity was "well settled" at common law. 424 U.S. at 424–28, 96 S.Ct. 984; *see* discussion *supra.* A strong argument can be

made that where a particular official enjoyed no immunity at common law, policy considerations such as encouraging vigorous public administration cannot justify the creation of a previously unknown immunity in the face of § 1983's sweeping language. *But cf. Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1211 n. 126 (1977) (Common law view "must be considered in light of the policies and purposes of the § 1983 action to determine whether importation of the defense, or allowance of a defense where the common law provides none, is appropriate.")

nia), *aff'd per curiam on other grounds*, 225 F.2d 245 (3d Cir. 1955) (en banc). In both *Lockhart* and *Ginsburg*, however, the prothonotaries were sued for *refusing* to docket certain papers, rather than for docketing papers. Of even greater importance here, the prothonotaries in both *Lockhart* and *Ginsburg* performed the complained-of acts at the express direction of one or more judges of the courts at which the prothonotaries were employed. Thus, *Lockhart* and *Ginsburg* simply recognize a defense—obedience to a direct judicial order—that is "[s]imilar to the defense of proper performance of ministerial duties." McCormack & Kirkpatrick, *supra*, 8 Rut.—Cam. L.J. at 77; *see Hazo v. Geltz*, 537 F.2d 747, 749–50 (3d Cir. 1976) (by implication); *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972). These cases do *not* hold that prothonotaries generally partake of absolute judicial or "quasi-judicial" immunity.[11]

Several other cases in this circuit, however, do support the broad rule of immunity advocated by Cortese. In four panel opinions handed down between 1967 and 1972, two of which were brief per curiam opinions, the Third Circuit found clerks and other state court employees to be absolutely immune from damages liability even in the absence of a direct judicial order. *See Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.) (alternative holding), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Smith v. Rosenbaum*, 460 F.2d 1019, 1020 (3d Cir. 1972) (per curiam) (alternative holding); *Marcedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971) (per curiam) (alternative holding); *Henig v. Odorioso*, 385 F.2d 491, 494 (3d Cir. 1967). *See also Waits v. McGowan*, 516 F.2d 203, 206 & n. 6 (3d Cir. 1975) (collecting cases from other jurisdictions). The dispositive issue here is the vitality of these decisions.

At the time these four decisions decided were handed down, *Pierson v. Ray, supra*, decided in 1967, was the only Supreme Court authority on judicial immunity. Af-

ter these four cases were decided, however, the Supreme Court, beginning in 1974, issued no less than six opinions dealing with questions of immunity. *See Stump v. Sparkman*, 435 U.S. ——, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Imbler v. Pachtman, supra; O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland, supra; Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). That *Wood v. Strickland*, in particular, wrought significant changes in the law of immunity is readily apparent from the opinion of the Third Circuit, sitting en banc, in *Skehan v. Board of Trustee of Bloomsburg State College*, 538 F.2d 53, 59–60 (3d Cir.) (en banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976):

> "Upon . . . consideration we conclude that *Wood v. Strickland* significantly modified the law of immunity upon which we relied [in 1974] in affirming the district court . . . . .
>
> . . . It was our view [then] that if the governmental officials performing discretionary government duties acted within the scope of their official responsibilities, they were [absolutely] immune from damage actions . . . . .
>
> . . . . .
>
> *Wood v. Strickland, supra*, demonstrates that we erred in assuming that there still existed an unqualified, common law immunity covering nonjudicial state government officials performing adjudicatory functions."

*See Forsyth v. Kleindienst*, 447 F.Supp. 192 at 200 (E.D.Pa.1978).

Although the Third Circuit has not been presented with a case involving the immunity of court employees since 1972, its more recent decisions on the immunity enjoyed by other government officials share two characteristics. In general, they take a sig-

---

11. Judge Aldisert's reference in *Lockhart* to "the recognized immunity enjoyed by judicial and quasi-judicial officers, including prothonotaries," 411 F.2d at 460, was dictum, as the

decision in that case was explicitly grounded on the prothonotary's obedience to a directive of the court. *Id.*

nificantly more restrictive approach to absolute "quasi-judicial" immunity than did the earlier decisions, and in particular they recognize that such immunity ordinarily extends only to officials performing "quasi-judicial," *i.e.,* adjudicatory or otherwise judgmental, functions. *Compare Skehan v. Board of Trustees, supra,* 538 F.2d at 59–61, *and Thompson v. Burke,* 556 F.2d 231, 236–39 (3d Cir. 1977) *with Hazo v. Geltz,* 537 F.2d 747, 749–51 (3d Cir. 1976) *and Jennings v. Shuman,* 567 F.2d 1213, 1221–22 (3d Cir. 1977). *See also Waits v. McGowan,* 516 F.2d 203, 206 (3d Cir. 1975) (dictum) (decided after *Scheuer v. Rhodes* but before *Wood v. Strickland*) (An official "directly involved in the judicial process . . . may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge.") Based on these developments, I conclude that the Third Circuit in all likelihood would not resolve the issue of Cortese's immunity simply on the basis of the four pre-*Strickland* decisions referred to earlier, and that, to the contrary, it would approach the issue afresh in light of *Strickland* and *Imbler v. Pachtman, supra.* Viewing the issue in that context, the historical background and the policy considerations set out earlier in this opinion lead me to conclude that Cortese cannot partake of absolute judicial or "quasi-judicial" immunity. *Accord, McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972); *Norwood v. Solomon,* 431 F.Supp. 380, 382 (E.D.Mo.1977).

It may be well to underscore the limited practical effect of this denial of absolute immunity. Cortese will, in all likelihood, be able to claim the benefit of qualified "good-faith" immunity at trial. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); note 3, *supra.* Thus, he will avoid any liability for damages unless it appears either that he acted maliciously, or that he "knew or reasonably should have known" that his actions would violate Raitport's constitutional rights. *See Wood v. Strick-*

*land, supra,* 420 U.S. at 322, 95 S.Ct. [992;] at 1001; *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1216 n. 152 (1977). *See generally* Note, *The Supreme Court,* 1974 Term, 89 Harv.L.Rev. 47, 219–25 (1975) (analysis of the *Wood v. Strickland* "reasonableness" standard). This, of course, is precisely the same qualified immunity that was accorded to the Governor of Ohio in *Scheuer v. Rhodes, supra,* and to the prison officials in *Procunier v. Navarette, supra.*

### Injunctive Relief

As I noted in connection with Raitport's section 1983 claims, the complaint contains no allegations that could possibly support an award of injunctive relief. This assessment holds true for the section 1985 claims as well. Accordingly, the complaint will be dismissed for failure to state a claim insofar as it seeks injunctive relief under section 1985 from any of the eight governmental defendants. *See* discussion *supra.*

### THE ANTITRUST CLAIMS

■■■ Raitport also asserts claims against all the defendants under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976). The factual allegations of the complaint, however, clearly reveal that these antitrust claims are meritless. I conclude that the acts allegedly performed by the various defendants do not even approach a combination in restraint of trade, which would be actionable under section 1, much less a monopoly or attempted monopoly, which would be actionable under section 2. Accordingly, the claims under both sections will be dismissed as to all defendant except Solvibile, who, as I noted earlier, has filed no motion with the court.

### CONCLUSION

For the reasons stated above, the damage claims under section 1983 will be dismissed as to defendants Hopkins, Dinda, Cooper, Smukler, and Tracey. The claims for equitable relief under section 1983 will be dismissed as to all the governmental defend-

ants being sued under that section, and as to defendant Tracey as well. The damage claims under section 1985 will be dismissed as to defendants Hopkins, Dinda, Cooper, Smukler, Provident, Tracey, Kolen, and Kolen & Lerch. The claims for equitable relief under section 1985 will be dismissed as to all the governmental defendants, and as to defendants Provident, Tracey, Kolen, and Kolen & Lerch as well. The claims under sections 1 and 2 of the Sherman Act will be dismissed as to all the governmental defendants, and as to defendants Provident, Tracey, Kolen and Kolen & Lerch as well. In all other respects, the defendants' motions to dismiss will be denied.